UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 12-6114

SERGE ADAMOV,

Plaintiff-Appellant,

v.

U.S. BANK NATIONAL ASSOCIATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Kentucky

**APPELLATE BRIEF OF APPELLEE
U.S. BANK NATIONAL ASSOCIATION**

Doreen Canton
Ryan M. Martin
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH   45202-3957
Telephone: (513) 381-2838
Fax: (513) 381-0205
canton@taftlaw.com
martinr@taftlaw.com

Counsel for Defendant-Appellee
U.S. Bank National Association

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SERGE ADAMOV                    :
                               :
         Plaintiff-Appellant,   :
                               :
v.                             :          No. 12-6114
                               :
U.S. BANK NATIONAL             :
ASSOCIATION                    :
                               :
         Defendant-Appellee.    :

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to Sixth Circuit Rule 26.1, Appellee U.S. Bank National

Association makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  Yes.
     U.S. Bank National Association is a wholly owned subsidiary of U.S.
     Bancorp, which is a publicly traded company.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a
     financial interest in the outcome?  No.


/s/ Doreen Canton                    January 14, 2013
Doreen Canton                        Date

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

PRELIMINARY STATEMENT REGARDING THE PARTIES TO THIS APPEAL.........................................................................................vi

STATEMENT IN SUPPORT OF ORAL ARGUMENT. . . . . . . . . . . . . . . . . .vii

I.    COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..1

II.   COUNTERSTATEMENT OF THE FACTS.....................................................2

    A.    Mr. Adamov's Employment at U.S. Bank ............................................2

    B.    U.S. Bank's Corporate Security Department Begins An Investigation Of Wire Transfer Activity In Mr. Adamov's Personal Account. .........3

    C.    The U.S. Bank Security Department Investigation Uncovers That Mr. Adamov Made A Personal Loan To A Customer. ................................3

    D.    U.S. Bank Terminates Mr. Adamov's Employment. ...........................5

III.  SUMMARY OF ARGUMENT ........................................................................5

IV.   ARGUMENT ..................................................................................................7

    A.    The District Court Correctly Granted Summary Judgment On Mr. Adamov's National Origin Discrimination Claim Because Mr. Adamov Cannot Establish Pretext. .......................................................7

        1.    Mr. Adamov Has Waived Any Argument Concerning The 2004 "Clarification" Document By Not Raising It In The District Court. ........................................................................8

        2.    Even Were Waiver Not An Issue, The Undisputed Evidence Is That Mr. Adamov's Conduct Violated The U.S. Bank Code Of Ethics. ................................................................................10

3.    The Fact That Mr. Adamov Did Not Receive Several Promotions For Which He Applied Is Irrelevant. ..................12

4.    Mr. Hartnack's Minimal Role In The Decision To Terminate Mr. Adamov's Employment Is Clearly Established In The Record. ..................................................................13

5.    It Is Undisputed That Mr. Adamov's Supervisors Had Nothing To Do With The Investigation Into His Wire Transfers Or Personal Loan. ........................................................16

6.    Mr. Adamov Cannot Establish "Cat's Paw" Liability In This Case And Never Raised This Issue In The District Court. .....19

B.    The District Court Properly Dismissed Mr. Adamov's Retaliation Claim. . ...................................................................22

1.    This Court Cannot Consider The Updated Charge Mr. Adamov Allegedly Filed With The EEOC Because It Is Not A Part Of The Record. ..............................................................22

2.    Mr. Adamov Was Not Prejudiced By The District Court's *Sua Sponte* Dismissal Of His Retaliation Claim Because He Had 17 Months To Bring This Issue To The District Court's Attention And Failed To Do So. ..........................................................25

3.    Any Error By The District Court Was Harmless Because Mr. Adamov Cannot Establish Pretext. .........................................26

V.  CONCLUSION ................................................................27

CERTIFICATE OF COMPLIANCE WITH RULE 32 ...........................28

CERTIFICATE OF SERVICE ..............................................29

ADDENDUM ...........................................................30

# TABLE OF AUTHORITIES

## CASES

*Anschutz Land & Livestock Co. v. Union Pac. R.R. Co.*,
  820 F.2d 338 (10th Cir. 1987) .........................................................................9

*Aquino v. Stone*, 957 F.2d 139 (4th Cir. 1992) ......................................................23

*B&H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257 (6th Cir. 2008)....................9

*Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*,
  528 F.3d 556 (8th Cir. 2008) .........................................................................23

*Bush v. Dictaphone Corp.*, 161 F.3d 363 (6th Cir. 1998).......................................21

*Davis v. Omni-Care, Inc.*, 482 Fed. Appx. 102 (6th Cir. 2012) ........................ 19-20

*Delphi Automotive Systems, LLC v. United Plastics, Inc.*,
  418 Fed. Appx. 374 (6th Cir. 2011) ......................................................... 25-26

*Estate of Quirk v. Comm'r*, 928 F.2d 751 (6th Cir. 1991).......................................9

*Heath v. Helmick*, 173 F.2d 156 (9th Cir. 1949) ............................................. 24-25

*J.D. Nettles, Jr. v. City of Leesburg – Police Department*,
  415 Fed. Appx. 116 (6th Cir. 2010) .............................................................26

*Lautner v. American Telephone and Telegraph Co.*,
  106 F.3d 401, 1997 WL 26467 (6th Cir. Jan. 22, 1997) ........................ 22-23

*Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721 (6th Cir. 2012)...........................21

*Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078 (6th Cir. 1994) ...............7

*McDermott v. Continental Airlines, Inc.*,
  339 Fed. Appx. 552 (6th Cir. 2009) .............................................................21

*Meyer v. AmerisourceBergen Drug Corp.*,
  264 Fed. Appx. 470 (6th Cir. 2008) .............................................................26

*Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992)................................... 12-13

*Phelps v. Yale Security, Inc.*, 986 F.2d 1020 (6th Cir. 1993) .................................21

*Romans v. Michigan Dep't of Human Services*, 668 F.3d 826 (6th Cir. 2012).......20

*S&E Shipping Corp. v. Chesapeake & Ohio Railway Co.*,
    678 F.2d 636 (6th Cir. 1982) .................................................................. 23-24

*St. Marys Foundry, Inc. v. Employers Ins. of Wausau*,
    332 F.3d 989 (6th Cir. 2003) .........................................................................9

*Stockman v. Oakcrest Dental Center, P.C.*, 480 F.3d 791 (6th Cir. 2007) .............21

*U.S. v. Barrow*, 118 F.3d 482 (6th Cir. 1997) .........................................................24

*U.S. v. Cornell*, 162 Fed. Appx. 404 (6th Cir. 2006)...............................................24

*U.S. v. Elizalde-Adame*, 262 F.3d 637 (7th Cir. 2001)...........................................24

## FEDERAL RULES AND GUIDELINES

Federal Rule of Appellate Procedure 10(a) ..............................................................22

Federal Rule of Appellate Procedure 10(e) ....................................................... 23-24

Federal Rule of Appellate Procedure 32.................................................................28

## PRELIMINARY STATEMENT REGARDING
## THE PARTIES TO THIS APPEAL

On March 7, 2011, the District Court dismissed the individual defendants originally named in this action, Rick Hartnack and Steven SaLoutos, under Fed. R. 12(b)(6) because the allegations in Plaintiff Serge Adamov's First Amended Complaint failed to state a claim upon which relief could be granted under the standard adopted by the U.S. Supreme Court in *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1969 (2007).  (R. 18, Opinion – Motion to Dismiss at 3-4, Page ID #118-19) Although Mr. Adamov includes Mr. Hartnack and Mr. SaLoutos in the caption of his appellate brief, he does not challenge the District Court's decision dismissing these individuals as defendants.  For this reason, Defendant U.S. Bank National Association ("U.S. Bank") will not treat Mr. Hartnack and Mr. SaLoutos as parties to this appeal and will not address the claims related to them.

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

U.S. Bank National Association ("U.S. Bank") respectfully requests that oral argument be heard in this matter.  U.S. Bank believes oral argument will assist the Court in its review of the issues.

### I.    <u>Counterstatement Of The Issues Presented For Review</u>

A.    Did the District Court properly determine that summary judgment was appropriate on Mr. Adamov's national origin discrimination claim based on the undisputed record evidence that his providing a personal loan to a customer was a violation of the U.S. Bank Code of Ethics?

B.    Did the District Court properly dismiss Mr. Adamov's retaliation claim based on his failure to exhaust administrative remedies?

C.    Can Mr. Adamov rely on a document outside of the District Court record to collaterally attack the District Court's decision to dismiss his retaliation claim when he had 17 months to bring the alleged document to the District Court's attention?  If so, because Mr. Adamov cannot establish pretext, was he prejudiced by the District Court's decision?

## II.    Counterstatement Of Facts

### A.    Mr. Adamov's Employment At U.S. Bank

Serge Adamov came to the United States from Azerbaijan, a former republic of the Soviet Union, in 1992. (R. 50, Pl. Dep. 13-14, 16, Page ID #443-44) U.S. Bank hired him as an Assistant Branch Manager in July 1998, and later promoted him to Branch Manager and District Manager positions. (*Id.* at 17-18, 23-24, Page ID #448, 454) He was a top producer, a "legend" who received "exceptional" evaluations. (*Id.* at 22, 29, 32, Page ID #452, 459, 462; R. 52, Mockapetris Dep. 17, Page ID #631)

In late 2007, Mr. Adamov began reporting to Regional Manager Arlene Mockapetris. (R. 50, Pl. Dep. 31, Page ID #461; R. 52, Mockapetris Dep. 7, Page ID #621; R. 48, Hartnack Dep. 14, Page ID #413) Ms. Mockapetris reports to Executive Vice President Steven SaLoutos. (R. 46, SaLoutos Dep. 6, 9, Page ID #328, 331) Mr. SaLoutos reports to the Vice Chairman for Consumer Banking, Richard Hartnack, who reports to the CEO. (*Id.* at 7, Page ID #329) As a District Manager, Mr. Adamov was a senior manager and an officer of U.S. Bank. (*Id.* at 11-12, Page ID #333; R. 5-3, Seeley Decl. ¶¶ 2-4, Page ID #28-29)

B.     U.S. Bank's Corporate Security Department Begins An
       Investigation Of Wire Transfer Activity In Mr. Adamov's
       Personal Account.

Federal regulations require banks to monitor customer accounts (including

employee accounts) for suspicious activity.  (R. 46, SaLoutos Dep. 35-36, Page ID

#357-58; R. 52, Mockapetris Dep. 26-27, Page ID #640-41)  In July and August

2009, U.S. Bank's Security Department conducted an investigation related to hits

from a computer-generated sweep of U.S. Bank customer accounts that involved

Mr. Adamov.  (R. 41-2, Burk Decl. ¶ 3, Page ID #278; R. 46, SaLoutos Dep. 35,

Page ID #357)

None of the managers to whom Mr. Adamov reported, directly or indirectly,

were involved in the investigation.  (R. 41-2, Burk Decl. ¶ 4, Page ID #278; R. 52,

Mockapetris Dep. 26-27, 29, Page ID #640-41, 643; R. 46, SaLoutos Dep. 38-41,

Page ID #360-363; R. 48, Hartnack Dep. 19-20, Page ID #418-19)

C.     The U.S. Bank Security Department Investigation Uncovers
       That Mr. Adamov Made A Personal Loan To A Customer.

While investigating the wire transfers, the Security Department discovered

that Mr. Adamov had personally made a $10,000 loan to a customer in 2007.  (R.

41-2, Burk Decl. ¶ 5, Page ID #278)  On July 30, 2009, Vice President of

Corporate Compliance Patti Burk and other security personnel met with

Mr. Adamov to question him about the loan to the customer and other matters.  (*Id.*

at ¶ 6, Page ID #278; R. 50, Pl. Dep. 50-60, Page ID #480-490)

After further investigation, including responses from Mr. Adamov, a summary of the investigation was prepared for Charlotte Manison and Dale Jacobsen in Human Resources.  (R. 41-2, Burk Decl. ¶ 7, Page ID #279)  On August 20, 2009, the investigation results were reviewed with Ms. Manison and Mr. Jacobsen.  (*Id.*)  After a lengthy discussion, the corporate security and human resources personnel agreed to recommend to Ms. Mockapetris and Mr. SaLoutos that Mr. Adamov be terminated for violating U.S. Bank's Code of Ethics.  (*Id.* at ¶ 8, Page ID #279)  The Code of Ethics prohibited employees from lending money to customers.  (*Id.* at ¶ 9, Ex. 1 at p. 30, Page ID #279, 286; R. 46, SaLoutos Dep. 35, 45, 53, Page ID #357, 367, 375; R. 52, Mockapetris Dep. 37-38, 46, Page ID #651-52, 660)  Ms. Mockapetris and Mr. SaLoutos agreed with the recommendation. (R. 52, Mockapetris Dep. 37-40, Page ID #651-654)

Mr. SaLoutos advised Mr. Hartnack of the Code of Ethics violation and termination decision; that was Mr. Hartnack's only involvement (other than potentially being informed that Mr. Adamov committed a Code of Ethics violation and telling Mr. SaLoutos to "be very careful that you have all the facts in the case from all perspectives and then...you've got to go where the facts lead you").  (R. 48, Hartnack Dep. 19-20, Page ID #418-19)  Mr. SaLoutos confirmed that Mr. Hartnack "was aware what we were going to be doing" because Mr. SaLoutos

"would share with him any – any senior management termination information."

(R. 46, SaLoutos Dep. 53, Page ID #375)

D.     U.S. Bank Terminates Mr. Adamov's Employment.

On August 31, Mr. SaLoutos, Ms. Mockapetris and Ms. Manison met with

Mr. Adamov and terminated his employment for violating the Code of Ethics by

lending money to a customer.  (R. 50, Pl. Dep. 65, Page ID #495; R. 52,

Mockapetris Dep. 42, 46-47, Page ID #656, 660-61; R. 46, SaLoutos Dep. 42, Page

ID #364; R. 48, Hartnack Dep. 20, Page ID #419)

### III.     Summary Of The Argument

The District Court did not err in granting summary judgment to U.S. Bank

on Mr. Adamov's national origin discrimination claim.  Mr. Adamov lacks

evidence sufficient to create a genuine issue of material fact regarding whether

U.S. Bank's legitimate, non-discriminatory reason for terminating his employment,

making a personal loan to a customer in violation of U.S. Bank policies, is a

pretext for intentional discrimination.  Mr. Adamov attempts to collaterally attack

the District Court's decision through arguments and so-called "evidence" that were

never presented to the District Court.  These new arguments cannot be considered

by this Court under well-established precedent.  The arguments are also meritless

and not supported by the record.

Mr. Adamov's remaining arguments regarding alleged errors in the District Court's summary judgment decision – concerning his failure to receive several promotions, his unsupported belief that his supervisors began the investigation into his conduct after he allegedly complained about discrimination and the extent to which Mr. Hartnack was involved in the decision to terminate his employment – are also meritless. The District Court's well-reasoned decision granting U.S. Bank's motion for summary judgment should be affirmed.

The District Court also correctly dismissed Mr. Adamov's retaliation claim. In support of this assignment of error, Mr. Adamov relies on an alleged perfected EEOC charge that was never filed with the District Court and is not a part of the record on appeal. It cannot be considered for this reason.

Mr. Adamov was not prejudiced by the *sua sponte* nature of the District Court's opinion granting U.S. Bank's motion to dismiss. The District Court did not dismiss his claims with prejudice. Nor did it prohibit Mr. Adamov from filing an amended complaint. Nevertheless, Mr. Adamov failed to raise his exhaustion argument during the **17 months** the case remained pending before the District Court entered its decision granting U.S. Bank's motion for summary judgment on Mr. Adamov's national origin discrimination claim. Mr. Adamov's assignment of error is also irrelevant because he could not establish pretext if his retaliation claim

were permitted to proceed to summary judgment.  The District Court's decision should be affirmed in its entirety.

## IV.   <u>Argument</u>

A.   The District Court Correctly Granted Summary Judgment On Mr. Adamov's National Origin Discrimination Claim Because <u>Mr. Adamov Cannot Establish Pretext.</u>

A plaintiff can establish pretext by showing that: (1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual motivation for the termination; or (3) the reason offered was insufficient to explain the employer's action.  *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).  In its decision granting U.S. Bank's motion for summary judgment, the District Court correctly determined that Mr. Adamov could not establish that U.S. Bank's reason for terminating his employment – his loan to a customer in violation of U.S. Bank policy – was a pretext for intentional national origin discrimination.  (R. 63, Opinion – Motion for Summary Judgment at 8, Page ID #787)

On appeal, Mr. Adamov attempts to collaterally attack the District Court's decision by arguing that a 2004 "clarification" document Mr. Adamov received and signed somehow constituted the Code of Ethics in effect when he made the inappropriate personal loan.  This argument is both procedurally improper and meritless.  Mr. Adamov never made any argument to the District Court concerning

the 2004 "clarification" document, and this Court has repeatedly determined that it cannot consider arguments raised for the first time on appeal. Mr. Adamov's new argument additionally ignores the plain language of the "clarification" document itself, which provides that the document **does not** represent or supersede the Code of Ethics.

Mr. Adamov's remaining arguments regarding alleged errors in the District Court's summary judgment decision – concerning his failure to receive several promotions, his unsupported belief that his supervisors began the investigation into his conduct after he allegedly complained about discrimination and the extent to which Mr. Hartnack was involved in the decision to terminate his employment – are also meritless. The District Court's well-reasoned decision granting U.S. Bank's motion for summary judgment should be affirmed.

      1.    Mr. Adamov Has Waived Any Argument Concerning The 2004 "Clarification" Document By Not Raising It In The District Court.

In his appellate brief, Mr. Adamov argues – for the first time – that U.S. Bank "examined Adamov on its 2004 Code of Ethics and Business Conduct...[which] does not prohibit making loans to customers who are friends." (Appellate Brief at 12) Notwithstanding that this argument is incorrect, as discussed in detail below, it has also been waived.

This Court holds that it "generally 'cannot consider an issue not passed on below.'"  *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 (6th Cir. 2008) (*citing St. Marys Foundry, Inc. v. Employers Ins. of Wausau*, 332 F.3d 989, 995-96 (6th Cir. 2003)).

> Propounding new arguments on appeal in attempting to prompt us to reverse the trial court – arguments never considered by the trial court – is not only somewhat devious, it undermines important judicial values.  The rule disciplines and preserves the respective functions of the trial and appellate courts.  If the rule were otherwise, we would be usurping the role of the first-level trial court with respect to the newly raised issue rather than reviewing the trial court's actions. … In order to preserve the integrity of the appellate structure, we should not be considered a 'second shot' forum, a forum where secondary, back-up theories may be mounted for the first time.

*Estate of Quirk v. Comm'r*, 928 F.2d 751, 758 (6th Cir. 1991) (quoting *Anschutz Land & Livestock Co. v. Union Pac. R.R. Co.*, 820 F.2d 338, 344 n. 5 (10th Cir. 1987)).  This Court does not rule on an issue not decided below absent "exceptional" circumstances.  *St. Marys*, 332 F.3d at 996.

No such exceptional circumstances exist in this case.  Mr. Adamov had the opportunity to explore his new (albeit meritless) theory that the 2004 "clarification" document he signed constituted the Code of Ethics that controlled his giving a personal loan to a customer during discovery and to raise the issue in

response to U.S. Bank's motion for summary judgment.  He failed to do so.[1]  He should not be able to raise the argument for the first time on appeal.

Mr. Adamov admits in his appellate brief that the only argument he advanced in the District Court on this issue involved a version of the Code of Ethics revised in September 2011, which the District Court rejected.  (Appellate Brief at 13)  No mention was made of the 2004 "clarification" document, and the District Court never considered this issue.  Mr. Adamov has waived the argument he now advances on appeal.

> 2.     Even Were Waiver Not An Issue, The Undisputed Evidence Is That Mr. Adamov's Conduct Violated The U.S. Bank Code Of Ethics.

Mr. Adamov's new argument that the Code of Ethics did not prohibit personal loans to customers in 2007 – based on the "Code of Ethics & Business Conduct:  Security, Transaction & Recordkeeping Clarification" document he cites in his appellate brief – is meritless.  In addition to the title of the "clarification" document, which goes a long way toward disproving Mr. Adamov's new theory, the plain language of the document specifies that it is not the Code of Ethics and should not be used as a substitute for the actual document:

---

[1] Mr. Adamov never requested another version of the U.S. Bank Code of Ethics during discovery.

> U.S. Bank's strong ethical reputation is a critical asset, and each of us shares a personal responsibility to protect, preserve and enhance it.  The U.S. Bank Code of Ethics & Business Conduct (the Code) provides all U.S. Bank employees overriding guidelines for ethical standards.  The clarifications below help to interpret expectations and requirements for performing account maintenance, record keeping, Five Star Service Guarantee payments, access controls and teller balancing **and are not intended to be an exhaustive list or to in any way supercede [sic] the Code**.

(R. 50, Pl. Dep. Ex. 9, Page ID #596; emphasis added)  The document was used during Mr. Adamov's deposition only to inquire into whether Mr. Adamov could recall the training he received while he was employed by U.S. Bank in Denver, Colorado. (R. 50, Pl. Dep. 33, Page ID #463)  And provisions regarding making personal loans to customers would not be contained in a clarification document limited to account maintenance, record keeping, Five Star Service Guarantee payments, access controls and teller balancing.

Mr. Adamov, who bears the burden of proof, lacks evidence that his decision to make a personal loan to a customer was not a Code of Ethics violation.  All of the evidence in the record supports the opposite conclusion.  Witnesses for U.S. Bank testified without contradiction that making a personal loan to a customer is a Code of Ethics violation.  (R. 41-2, Burk Decl. ¶ 9, Page ID #279; R. 46, SaLoutos Dep. 35, 45, 53, Page ID #357, 367, 375; R. 52, Mockapetris Dep. 37-38, 46, Page ID #651-52, 660)  This activity creates the potential for obvious conflicts of

interest and difficult situations with clients if, for example, a loan is not repaid. (R. 46, SaLoutos Dep. 45, Page ID #367; R. 52, Mockapetris Dep. 46, Page ID #660) U.S. Bank would also lose out on interest revenues available from originating a loan.

Mr. Adamov produced no evidence to dispute this testimony or to indicate that making personal loans to customers was permitted prior to 2008. He failed to meet his burden of establishing pretext in the District Court, and he cannot remedy this deficiency by making new arguments based on a document that clearly states it is not the Code of Ethics. The District Court's decision should be affirmed.

3.   The Fact That Mr. Adamov Did Not Receive Several Promotions For Which He Applied Is Irrelevant.

Although Mr. Adamov does not challenge the District Court's decision to dismiss his failure to promote claim (Appellate Brief at 19-25), he attempts to utilize the fact that he was not offered several promotions for which he applied as evidence of U.S. Bank's (and especially Mr. Hartnack's) alleged national origin bias. (Appellate Brief at 27) But Mr. Adamov has no evidence regarding the relative qualifications of the individuals selected for promotion ahead of him and offers nothing but his subjective belief that he was "most qualified" for the positions in question. (R. 50, Pl. Dep. 44, Page ID #474) Mr. Adamov's subjective belief that he was more qualified than co-workers selected for promotions is not evidence of discrimination. *See Mitchell v. Toledo Hosp.*, 964

F.2d 577, 585 (6th Cir. 1992) ("[C]onclusory allegations and subjective beliefs ... are wholly insufficient evidence to establish a claim of discrimination as a matter of law.")  It is also undisputed that Mr. SaLoutos was the decision-maker regarding the promotions, not Mr. Hartnack.  (R. 46, SaLoutos Dep. 33-34, Page ID #355-56)

There is no evidence that Mr. Hartnack and Mr. SaLoutos blocked Mr. Adamov's advancement, and the record is devoid of evidence establishing that individuals less qualified than Mr. Adamov obtained the promotions Mr. Adamov sought.  The fact that Mr. Adamov did not receive several promotions to regional manager is not evidence of pretext.

4.      Mr. Hartnack's Minimal Role In The Decision To Terminate Mr. Adamov's Employment Is Established In The Record.

Mr. Adamov's claim that Mr. Hartnack played a "critical role" in the decision to terminate his employment (Appellate Brief at 28) is unsupportable. After the U.S. Bank security department investigated Mr. Adamov's conduct, security officials met with Charlotte Manison and Dale Jacobsen in Human Resources to review the results of the investigation.  (R. 41-2, Burk Decl. ¶ 7, Page ID #279)  At that time, Ms. Manison and Mr. Jacobsen agreed to recommend to Ms. Mockapetris and Mr. SaLoutos – not Mr. Hartnack – that Mr. Adamov be terminated for violating U.S. Bank's Code of Ethics.  (*Id.* at ¶ 8, Page ID #279)

Ms. Mockapetris and Mr. SaLoutos agreed with the recommendation. (R. 52, Mockapetris Dep. 37-40, Page ID #651-654)

Mr. SaLoutos advised Mr. Hartnack of the Code of Ethics violation during the investigation process and stated that termination was a likely result, at which point Mr. Hartnack told Mr. SaLoutos, in keeping with his normal practice, to "be very careful that you have all the facts in the case from all perspectives and then...you've got to go where the facts lead you." (R. 48, Hartnack Dep. 19-20, Page ID #418-19) Mr. SaLoutos confirmed that Mr. Hartnack "was aware what we were going to be doing" because Mr. SaLoutos "would share with him any – any senior management termination information." (R. 46, SaLoutos Dep. 53, Page ID #375)

Mr. Adamov's attempt to establish from this testimony that U.S. Bank witnesses prevaricated regarding Mr. Hartnack's involvement and that Mr. Hartnack was somehow more involved in (indeed "critical" to) the termination decision is misguided. Mr. SaLoutos's testimony that Mr. Hartnack was "aware [of] what we were going to be doing" (*Id.*) is no different from Mr. Hartnack's testimony that he was informed of the decision during the process. (R. 48, Hartnack Dep. 19-20, Page ID #418-19) Mr. SaLoutos explained his testimony that Mr. Hartnack had "input" into the process as follows:

Q. Okay. All right. So I thought you testified that Hartnack did have input into the decision to terminate Serge's employment?

A. Yes.

Q. That differs than what I've been told before. I just wanted to make sure that's accurate.

A. Well, it's my decision, but he was aware what we were going to be doing.

Q. Okay.

A. And because I would share with him any – any senior management termination information.

(R. 46, SaLoutos Dep. 53, Page ID #375) Mr. SaLoutos went on to clarify that Mr.

Hartnack's "involvement" constituted at least one telephone call between he and

Mr. Hartnack. That was it. (*Id.*)

The note on the U.S. Bank memorandum referenced by Mr. Adamov is not

contrary to this testimony and does not establish Mr. Hartnack as the "primary

figure in the decision making chain of command," as Mr. Adamov suggests.

(Appellate Brief at 30) The phrase "Ricks support" cannot be interpreted to

indicate that Mr. Hartnack was instrumental in recommending Mr. Adamov's

termination or played any significant role in the process. It does not even mean

that Mr. Hartnack had already been informed of the recommendation or decision at

the time the note was written. If that were the case, the phrase would have been

"Rick supports." In any event, Mr. Adamov's proposition that Mr. Hartnack

supported the recommendation of the investigators upon being informed of the

violation would not establish that he was somehow more involved in the

investigation or had any influence over the decision to terminate.  It also fails to

show that Mr. Adamov was terminated because he was Russian.

Finally, the fact that Ms. Mockapetris (as Mr. Adamov's supervisor) and Mr.

SaLoutos (as division manager) take ownership of the termination decision does

not create any genuine issue of material fact regarding Mr. Hartnack's involvement

in the process or whether Mr. Adamov's termination for making a personal loan to

a customer was a pretext for national origin discrimination.

5.    It Is Undisputed That Mr. Adamov's Supervisors Had
Nothing To Do With The Investigation Into His Wire
Transfers Or Personal Loan.

As with his response in opposition to U.S. Bank's motion for summary

judgment in the District Court, Mr. Adamov attempts to link the investigation into

his wire transfer and personal loan activities to his alleged complaint to Ms.

Mockapetris.  (Appellate Brief at 31)  But it is undisputed that no one who Mr.

Adamov says had knowledge of his alleged complaint had anything to do with the

investigation or the initial recommendation to terminate Mr. Adamov's employment.[2]

A computer-generated sweep of U.S. Bank customer accounts (not a manager-driven witch hunt) alerted security personnel (not managers) to activity surrounding Mr. Adamov's bank account that needed to be investigated. (R. 41-2, Burk Decl. ¶ 3, Page ID #278; R. 46, SaLoutos Dep. 35, Page ID #357) Upon receiving the report, employees within U.S. Bank's Security Department (not Mr. Hartnack, Mr. SaLoutos or Ms. Mockapetris) conducted the investigation, which ultimately led to Mr. Adamov's termination. (*Id.*)

The evidence establishes that Mr. Hartnack, Mr. SaLoutos and Ms. Mockapetris had no involvement in this investigation. (R. 41-2, Burk Decl. ¶ 4, Page ID #278; R. 52, Mockapetris Dep. 26-27, 29, Page ID #640-41, 643; R. 46, SaLoutos Dep. 38-41, Page ID #360-363; R. 48, Hartnack Dep. 19-20, Page ID #418-19) The U.S. Bank Security Department discovered the improper loan and reviewed its investigation findings with Charlotte Manison and Dale Jacobsen – corporate Human Resources employees. (R. 41-2, Burk Decl. ¶ 7, Page ID #279) These individuals, who had no connection or interaction with Mr. Adamov,

---

[2] Mr. Adamov's implication that Mr. SaLoutos was aware that Mr. Adamov complained of national origin discrimination based on one line in his deposition is misleading and meritless. (Appellate Brief at 33) Mr. SaLoutos referenced Mr. Adamov's alleged complaint in the cited testimony only because counsel for Mr. Adamov used the complaint as the premise for his question. (R. 46, SaLoutos Dep. 49, Page ID #371)

recommended termination based on U.S. Bank's policies. (*Id.* at ¶ 9, Page ID #279)  Mr. SaLoutos and Ms. Mockapetris agreed with the recommendation, and Mr. Hartnack was advised of the decision.  (R. 52, Mockapetris Dep. 37-40, Page ID #651-54; R. 48, Hartnack Dep. 19-20, Page ID 418-19)[3]  There is no evidence that any of Mr. Adamov's managers played any role in the investigation other than accepting the recommendation of U.S. Bank Security and Human Resources personnel.

The fact that other of Mr. Adamov's wire transfers had been reviewed by U.S. Bank in the past is irrelevant.  There is no evidence that the wire transfers relevant to the latest security investigation were identical to the transfers subject to prior scrutiny.  And, in any event, it would be bad banking policy to immunize an individual who has been cleared from wrongdoing in the past from all future money laundering investigations based on separate transactions.  Mr. Adamov's latest wire transfers appeared on the U.S. Bank suspicious activity report for a reason, and U.S. Bank security personnel had a duty under federal law to

_____

[3] Mr. SaLoutos did not give an "unclear explanation for the reason for Adamov's termination," as Mr. Adamov claims in his appellate brief.  (Appellate Brief at 31)  Mr. SaLoutos stated that the personal loan was the trigger for the termination.  (R. 46, SaLoutos Dep. 41-42, Page ID #363)  His further testimony that the wire transfer issue "could have been a termination event" (*Id.* at 42, Page ID #364) is accurate.  As Mr. SaLoutos testified, without contradiction, U.S. Bank "had not made a determination that we had a termination cause" with respect to the wire transfers at the time Mr. Adamov was terminated for the personal loan.  (*Id.* at 41, Page ID #363)  That could have changed pending the results of the investigation had Mr. Adamov not already been fired for making the loan.

investigate.  (R. 41-2, Burk Decl. ¶ 3, Page ID #278; R. 46, SaLoutos Dep. 35-36, Page ID #357-58; R. 52, Mockapetris Dep. 26-27, Page ID #640-41)

> 6.    Mr. Adamov Cannot Establish "Cat's Paw" Liability In This Case And Never Raised This Issue With The District Court.

Mr. Adamov's claim that Mr. Hartnack's alleged bias "infected the company personnel who approved his decisions" is wrong for many reasons.  It has also been waived.  Mr. Adamov never raised a "cat's paw" theory below, and he cannot do so now for the reasons outlined above in Section A.1.

Notwithstanding the waiver issue, Mr. Adamov's "cat's paw" theory is meritless.  When a plaintiff challenges an employment decision as motivated by a supervisor's discriminatory animus, he must offer evidence of a "causal nexus" between the decision and the supervisor's discriminating animus.  *Davis v. Omni-Care, Inc.*, 482 Fed. Appx. 102, 109 (6th Cir. 2012).  The act of the biased supervisor must be the proximate cause of the ultimate employment action.  *Id.*

The "cat's paw" theory is inapplicable to this case.  It is undisputed that U.S. Bank security personnel – not Mr. Hartnack or any of Mr. Adamov's other supervisors – began the investigation into his activities.  (R. 41-2, Burk Decl. ¶¶ 3-4, Page ID #278; R. 52, Mockapetris Dep. 26-27, 29, Page ID #640-41, 643; R. 46, SaLoutos Dep. 38-41, Page ID #360-363; R. 48, Hartnack Dep. 19-20, Page ID #418-19)  After conducting the investigation, security officers and corporate

human resources personnel unconnected to Mr. Adamov decided to recommend termination to Mr. Mockapetris and Mr. SaLoutos.  (R. 41-2; Burk Decl. at ¶ 8, Page ID #279)  Ms. Mockapetris and Mr. SaLoutos agreed with the recommendation.  (R. 52, Mockapetris Dep. 37-40, Page ID #651-54)

Although Mr. SaLoutos advised Mr. Hartnack of the Code of Ethics violation and that termination was an option, there is no evidence in the record to support that Mr. Hartnack did anything to influence the investigation or the decision (which had already been discussed).  In fact, the evidence shows the opposite.  Mr. Hartnack's undisputed testimony is that his "input" into the decision would have been telling Mr. SaLoutos to "be very careful that you have all the facts in the case from all perspectives and then...you've got to go where the facts lead you."  (R. 48, Hartnack Dep. 19, Page ID #418)  Even if Mr. Hartnack "rubber stamped" the final decision to terminate Mr. Adamov (there is not even evidence of this in the record) this would be insufficient to constitute "cat's paw" liability because the termination decision was reached after an independent investigation by U.S. Bank security and human resources personnel.  *Romans v. Michigan Dep't of Human Services*, 668 F.3d 826, 836 (6th Cir. 2012) (independent investigation breaks causal chain).  The termination decision also related to an undisputed event – Mr. Adamov making the personal loan – which is an independent reason to reject the application of the "cat's paw" theory.  *Davis*, 482 Fed. Appx. at 109-110.

Finally, the comments upon which Mr. Adamov's new "cat's paw" theory is based, which were allegedly made years before Mr. Adamov was terminated, are insufficient to defeat summary judgment as a matter of law.  Isolated and ambiguous remarks are "too abstract in addition to being irrelevant" to support a finding of discrimination where there is no evidence "to place the alleged remark[s] in the context of any employment decision."  *Stockman v. Oakcrest Dental Center, P.C.*, 480 F.3d 791, 801 (6th Cir. 2007) (citing *Phelps v. Yale Security, Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993)); *McDermott v. Continental Airlines, Inc.*, 339 Fed. Appx. 552, 557 (6th Cir. 2009).  Federal courts have made clear that stray remarks unrelated to the decision-making process at issue are insufficient, even when (unlike here) "the decision-maker is the one making the comment."  *McDermott*, 339 Fed. Appx. at 557.  *See also Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012) ("[S]tatements by decisionmakers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden...of demonstrating animus.") (second alteration in original) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)).

The District Court's decision granting summary judgment on Mr. Adamov's national origin discrimination claim should be affirmed.

B.    The District Court Properly Dismissed Mr. Adamov's
       Retaliation Claim.

In addition to challenging the District Court's decision granting summary judgment to U.S. Bank on his national origin discrimination claim, Mr. Adamov challenges the District Court's decision to dismiss his retaliation claim against U.S. Bank for failure to exhaust administrative remedies.[4]  (Appellate Brief at 22-25) This argument is not properly before this Court because the alleged updated EEOC charge upon which Mr. Adamov relies was never made part of the District Court record (despite the fact that Mr. Adamov had almost a year and a half to file it). Even if this issue were properly before this Court, any error made by the District Court was harmless, as Mr. Adamov cannot establish pretext.

1.    This Court Should Not Consider The Updated Charge
       Mr. Adamov Allegedly Filed With The EEOC Because It
       Is Not A Part Of The Record.

For the same reason this Court does not consider arguments advanced for the first time on appeal, it also does not consider documents that were not made part of the record in the District Court.  *See* Fed. R. App. P. 10(a); *Lautner v. American Telephone and Telegraph Co.*, 106 F.3d 401, 1997 WL 26467, at *2 (6th Cir. Jan. 22, 1997) ("Because we review appeals from summary judgment only upon the record available to the district court, *see* Fed. R. App. P. 10(a), we deny [appellant's] request to supplement the record and refuse to consider the offered

---

[4] Mr. Adamov does not challenge the District Court's decision dismissing his failure to promote claim or his claims against Mr. Hartnack and Mr. SaLoutos.

additional materials.") (quoting *Aquino v. Stone*, 957 F.2d 139, 144 n.2 (4th Cir. 1992)).  *See also Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 559-60 (8th Cir. 2008) ("An appellate court can properly consider only the record and facts before the district court and thus only those papers and exhibits filed in the district court can constitute the record on appeal.") (citation omitted).

Mr. Adamov has filed a motion with the District Court to supplement the record pursuant to Fed. R. App. P. 10(e)(2)(c) to include his alleged "perfected charge" with the EEOC.  This motion is not well taken.  This Court has directly addressed, and rejected, an interpretation of Fed. R. App. P. 10(e) that would permit parties to supplement the record on appeal with documents not introduced during proceedings in the District Court, as Mr. Adamov requests here.

In *S&E Shipping Corp. v. Chesapeake & Ohio Railway Co.*, 678 F.2d 636 (6th Cir. 1982), the district court granted the parties' request to modify the record on appeal under Fed R. App. P. 10(e) and entered stipulations that would have eliminated federal jurisdiction over the matter.  *Id.* at 640-41.  A panel of this Court reversed the district court's decision modifying the record on appeal:

> We need not reach the issue of the effect of the stipulations filed in the litigation.  The stipulations were not properly brought before this court and, therefore, cannot be considered in our evaluation of the procedural issues.  The district court accepted the stipulations pursuant to Fed. R. App. P. 10(e) after S&E filed its notice of appeal.  The district court, however, **interpreted Appellate Rule 10(e) too broadly**.  The

> purpose of the rule is to allow the district court to correct omissions from or misstatements in the record for appeal, **not to introduce new evidence in the court of appeals**. Appellate Rule 10(e) does not empower a district court to accept stipulations which significantly alter the record after a notice of appeal has been filed.

*Id.* at 641 (emphasis added; citations omitted).[5]  The panel went on to determine that "Rule 10(e) allows modification of the record **transmitted to the court of appeals so that it adequately reflects what happened in the district court**."  *Id.* at 641 n.9 (emphasis added).  It is not meant to permit the introduction of new evidence or exhibits not made part of the district court record "even if the new evidence is substantial."  *U.S. v. Cornell*, 162 Fed. Appx. 404, 414 (6th Cir. 2006) (citing *U.S. v. Barrow*, 118 F.3d 482, 487-88 (6th Cir. 1997)).

Other circuit courts have reached the same conclusion.  *See U.S. v. Elizalde-Adame*, 262 F.3d 637, 640-41 (7th Cir. 2001) ("Elizalde-Adame moved under Fed. R. App. P. 10(e) to supplement the record with letters exchanged between her attorney and the attorney for the government during plea negotiations which discussed the preservation of her right to appeal the suppression motion.  The district court denied the motion, correctly noting that Rule 10(e) does not allow a party to add materials to the record on appeal which were not before the district court."); *Heath v. Helmick*, 173 F.2d 156, 157 (9th Cir. 1949) ("The rule cited has

---

[5] Although the *S&E Shipping* panel utilized a former version of Fed. R. App. P. 10(e), the substance of the current version of the rule remains the same.

not for its purpose the introduction of new evidence even by stipulation, but only

correction of the record to conform to truth by elimination of omissions and

misstatements.").

     Mr. Adamov's argument is procedurally improper.

> 2.    Mr. Adamov Was Not Prejudiced By The District
> Court's *Sua Sponte* Dismissal Of His Retaliation Claim
> Because He Had 17 Months To Bring This Issue To The
> District Court's Attention And Failed To Do So.

     Mr. Adamov's argument that he did not have an opportunity "to be heard"

on this issue is incorrect.  The Court's decision dismissing Mr. Adamov's

retaliation and promotion claims (but allowing his national origin discrimination

claim to continue) was filed on March 7, 2011.  (R. 18)  The Court did not indicate

that the dismissals were with prejudice or that Mr. Adamov could not file a second

amended complaint to remedy deficiencies present in the first amended complaint.

Nevertheless, Mr. Adamov never filed a second amended complaint, a motion for

reconsideration or any document indicating that he may have exhausted his

administrative remedies with the EEOC in the 17 months the case remained

pending until the District Court granted U.S. Bank's motion for summary judgment

on August 23, 2012.  (R. 63)

     Mr. Adamov had the opportunity to address the District Court's decision on

the motion to dismiss, but failed to do so.  He was not prejudiced by the District

Court's decision, and his appeal is meritless.  *Delphi Automotive Systems, LLC v.*

*United Plastics, Inc.*, 418 Fed. Appx. 374, 382 (6th Cir. 2011) ("Without a showing of prejudice, even in the absence of notice, there is no abuse of discretion in sua sponte granting judgment in favor of Cronin and American.") (citing *Meyer v. AmerisourceBergen Drug Corp.*, 264 Fed. Appx. 470, 479 (6th Cir. 2008)); *J.D. Nettles, Jr. v. City of Leesburg – Police Department*, 415 Fed. Appx. 116, 123-24 (6th Cir. 2010) (dismissal appropriate where plaintiff did not object to the district court's dismissal and failed to file a motion for reconsideration or request leave to amend the complaint).

       3.       Any Error By The District Court Was Harmless Because Mr. Adamov Cannot Establish Pretext.

Even if the District Court's decision to *sua sponte* dismiss Mr. Adamov's retaliation claim was error, the error was harmless considering that Mr. Adamov cannot establish pretext. As discussed above, Mr. Adamov has no evidence that U.S. Bank's legitimate non-discriminatory reason for terminating his employment was a pretext to conceal an unlawful motive. In fact, the individuals who were responsible for investigating Mr. Adamov's conduct and recommending termination (the corporate security and human resources personnel) undisputedly had no knowledge of any alleged protected activity.

## V.    <u>Conclusion</u>

For each and all of the foregoing reasons, U.S. Bank respectfully requests

that the District Court's judgment be affirmed.

Respectfully submitted,

/s/ Doreen Canton

Doreen Canton
Ryan Martin
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
513-381-2838; 513-381-0205 (fax)
canton@taftlaw.com
martinr@taftlaw.com

Counsel for Appellee
U.S. Bank National Association

# <u>CERTIFICATE OF COMPLIANCE WITH RULE 32</u>

The undersigned, pursuant to Fed. R. App. P. 32(A)(7)(B) and (C), certifies

that this brief has 6,266 words and complies with the type-volume limitation.


/s Doreen Canton
Doreen Canton

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 14, 2013, I electronically filed the Appellate Brief of Appellee U.S. Bank National Association with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:  Don Meade and Ben Basil, Priddy, Cutler, Miller & Meade PLLC, 800 Republic Bldg., 429 W. Muhammad Ali Blvd., Louisville, Kentucky 40202.


/s/ Doreen Canton
Doreen Canton
Ryan M. Martin
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
513-381-2838
513-381-0205 (fax)
canton@taftlaw.com
martinr@taftlaw.com

Counsel for Appellee
U.S. Bank National Association

## **ADDENDUM**

Defendant-Appellee U.S. Bank National Association, pursuant to Sixth Circuit Rule 28, hereby designates the following filings in the District Court's record as relevant:

| Description of Entry | Record Entry Number | Page ID Number |
|---|---|---|
| Opinion – Motion to Dismiss | 18 | 116-24 |
| Motion for Summary Judgment | 41 | 269-77 |
| Declaration of Patti C. Burk | 41-2 | 278-87 |
| Response to Motion for Summary Judgment | 44 | 296-304 |
| Deposition of Steven SaLoutos | 46 | 323-97 |
| Deposition of Richard Hartnack | 48 | 400-28 |
| Deposition of Serge Adamov (with Exhibits) | 50 | 431-612 |
| Deposition of Arlene Mockapetris | 52 | 615-76 |
| Reply in Support of Motion for Summary Judgment | 53 | 677-86 |
| Opinion – Motion for Summary Judgment | 63 | 780-87 |